FILED
IN CLERKS OFFICE

2025 OCT 10 PM 3:55

U.S. DISTRICT COURT
DISTRICT OF MASS.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**Clyde L. Younger**, on behalf of all similarly situated Americans,
**Plaintiff**, Pro Se
v.
**Donald J. Trump**, in his official capacity as President of the United States,
**Russell T. Vought**, in his official and individual capacities as Director of the Office of
Management and Budget and founder of the Center for Renewing America,
**Heritage Foundation**,
**Center for Renewing America**, and
**John/Jane Does 1–100**,
**Defendants.**

Civil Action No. _____-


**Preface: The Replacement Doctrine**

The Constitution of the United States, ratified in 1788, spans approximately four pages. It is concise by design—anchored in restraint, clarity, and the separation of powers.

In contrast, *Project 2025* spans over 900 pages. It is not merely a policy agenda or transition manual. It is a comprehensive operational blueprint—detailing personnel, enforcement, institutional restructuring, and ideological realignment.

This document does not interpret the Constitution. It **replaces it**.

The authors of Project 2025 have constructed a parallel framework that redefines executive authority, collapses independent agencies, and centralizes power under a singular ideological vision. Its scale and specificity exceed any historical precedent.

I submit to this Court that *Project 2025* is not a supplement to the Constitution—it is a **substitute**.

The question before the Court is not whether Project 2025 is constitutional. The question is whether the Constitution survives its implementation.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

This action seeks declaratory and injunctive relief to halt the implementation of **Project 2025**, a coordinated federal initiative that threatens the constitutional structure of the United States. The plan consolidates executive power, dismantles civil rights protections, and undermines judicial independence. If unchecked, it will irreparably transform the Republic, echoing historical precedents of authoritarian capture and institutional collapse.

Plaintiff resides in Watertown, Massachusetts, and has standing to bring this action both individually and on behalf of a class of Americans whose constitutional protections are endangered by the implementation of Project 2025. Plaintiff has suffered and continues to suffer harm through the erosion of judicial remedy, the weakening of civil rights enforcement, and the centralization of executive power that undermines the separation of powers and due process guarantees.

The nature of the relief sought—declaratory judgment and nationwide injunction—requires a federal forum capable of addressing constitutional violations with national impact. This Court is empowered to issue such relief and is an appropriate venue for adjudicating claims that implicate the structural integrity of the Republic and the rights of all Americans.



## SECTION I: INTRODUCTION

Plaintiff Clyde L. Younger, a constitutional litigant and civic advocate, brings this action on behalf of all similarly situated Americans to challenge the design and implementation of **Project 2025**—a coordinated federal initiative that threatens the foundational structure of the United States Constitution. This complaint seeks declaratory and injunctive relief to halt the execution of Project 2025, which consolidates executive power, dismantles civil rights protections, and undermines judicial independence. The plan's scope and intent constitute a constitutional emergency that demands immediate judicial intervention.

Project 2025, as publicly disseminated through the Heritage Foundation's *Mandate for Leadership: The Conservative Promise*, outlines a comprehensive restructuring of the federal government. It proposes the elimination of agency independence, the replacement of career civil servants with ideologically vetted loyalists, and the centralization of executive authority in ways that violate the separation of powers doctrine. The plan's architects have declared their intent to staff a second Trump administration with individuals committed to executing this agenda, regardless of its constitutional implications.

Plaintiff asserts that Project 2025 is not merely a policy proposal—it is a blueprint for authoritarian governance. Its implementation threatens to erase decades of civil rights progress, silence dissent, and render the judiciary subservient to executive will. The plan's emphasis on loyalty over law, its purge of institutional memory, and its disregard for constitutional constraints mirror historical patterns of democratic collapse, including the transition from the Weimar Republic to Nazi Germany.

This complaint is not brought in the interest of partisan opposition, but in defense of constitutional remedy. Plaintiff seeks to restore the balance of powers, protect vulnerable communities from targeted exclusion, and preserve the integrity of the judiciary as a co-equal branch of government. The Court's intervention is necessary to prevent irreversible harm to the Republic and to reaffirm that no person, institution, or ideology is above the Constitution.

## SECTION II: JURISDICTION AND VENUE

This Court has jurisdiction over this action pursuant to **28 U.S.C. § 1331,** as the claims arise under the Constitution and laws of the United States. Jurisdiction is also proper under **28 U.S.C. § 1343(a)(3)** and **(a)(4),** which confer authority to hear civil rights actions brought to redress the deprivation of rights, privileges, and immunities secured by the Constitution. Declaratory relief is authorized under **28 U.S.C. § 2201** and **§ 2202.**

Venue is proper in this District under **28 U.S.C. § 1391(b)(2),** as a substantial part of the events giving rise to the claims occurred within this jurisdiction, and the effects of the challenged conduct are felt nationwide, including by Plaintiff and similarly situated Americans residing in this District. The constitutional injuries alleged are not confined to Washington, D.C., or to federal agency headquarters—they are systemic, ongoing, and manifest in every state and district where federal authority is exercised.

Plaintiff brings this action in an individual capacity but reserves the right to seek class certification under Rule 23 of the Federal Rules of Civil Procedure should the scope of injury expand or enforcement mechanisms implicate a broader constitutional class.

## SECTION III: PARTIES

Plaintiff Clyde L. Younger is a constitutional litigant and civic advocate residing in Watertown, Massachusetts. He brings this action pro se and on behalf of all similarly situated Americans whose constitutional protections, access to judicial remedy, and civic clarity are endangered by the design and implementation of Project 2025. Plaintiff has a long-standing record of public service, including leadership in municipal government, intergenerational legacy projects, and federal litigation centered on remedy, historical truth, and ethical governance.

Defendant Donald J. Trump, in his official capacity as President of the United States, is overseeing and executing Project 2025 through personnel appointments, executive actions, and public endorsements. Although Defendant Trump has publicly disavowed direct authorship of the plan, he has praised its architects, relied on their guidance, and implemented its provisions through federal restructuring, agency purges, and civil rights rollbacks.

Defendant Russell T. Vought is sued in both his official and individual capacities. He currently serves as Director of the Office of Management and Budget (OMB), where he exercises broad authority over federal budgeting, agency funding, and executive resource allocation. Vought is also the founder of the Center for Renewing America and the principal architect of Project 2025, having authored key sections of the Mandate for Leadership, coordinated staffing strategies, and publicly promoted its implementation. His dual role—ideological strategist and fiscal gatekeeper—positions him to operationalize Project 2025 not merely through policy, but through control of the federal purse. This convergence of ideological design and budgetary power constitutes a structural threat to constitutional governance.

Defendant Heritage Foundation is the principal publisher and promoter of Project 2025. Through its publications, personnel networks, and policy campaigns, it has operationalized the plan's framework and coordinated its rollout across federal agencies.

Defendant Center for Renewing America is a policy organization founded by Russell T. Vought and actively involved in the design and promotion of Project 2025. It serves as a strategic hub for staffing, messaging, and implementation.

Defendants John/Jane Does 1–100 are individuals and entities whose identities are not yet known but who are believed to be actively involved in the design, promotion, and execution of Project 2025. Plaintiff reserves the right to amend this complaint to name these defendants as their identities become known.

## SECTION IV: NATURE OF THE THREAT: COORDINATED GOVERNANCE OUTSIDE CONSTITUTIONAL BOUNDS

Project 2025 is not a mere policy document—it is a coordinated governance framework designed to preempt democratic processes and concentrate federal power in the hands of a few ideologically aligned actors. Its architects have publicly declared their intent to "deconstruct the administrative state," eliminate agency independence, and install loyalists across federal institutions.

The plan bypasses Congressional deliberation by pre-selecting personnel and policy priorities for a future administration. It undermines judicial review by subordinating courts to executive will. It silences dissent by purging civil servants, dismantling DEI offices, and politicizing enforcement mechanisms.

Project 2025 is far ahead of Congress and the Supreme Court in operational design. It functions as a shadow government blueprint, anticipating legal challenges and restructuring federal authority before constitutional checks can be applied. Its implementation constitutes a live constitutional emergency.

**SECTION IV-A: Weaponization of Budgetary Authority**

Project 2025 transforms federal budgeting not as a neutral administrative function, but as a strategic tool for ideological enforcement. Under the leadership of Russell T. Vought—Director of the Office of Management and Budget and principal architect of Project 2025—budgetary power is being used to defund dissent and reward compliance; and restructure governance outside constitutional bounds.

As OMB Director, Vought holds expansive control over federal spending, agency funding, and executive resource allocation. Through Project 2025, he has publicly advocated for the elimination of "Democrat agencies," the defunding of diversity, equity, and inclusion (DEI) programs, and the redirection of federal funds away from race-conscious initiatives.[1]

In 2025 alone, billions in infrastructure projects were paused or canceled under this framework:

- **$18 billion** in New York City projects, including the Hudson Tunnel and Second Avenue Subway[2]
- **$2.1 billion** in Chicago, including the Red Line Extension[3]
  These cuts were justified on the grounds that DEI principles violated constitutional norms—despite decades of precedent supporting race-conscious remedy in federal contracting.[4]

Vought has stated his intent is to "put [federal employees] in trauma,"[5] signaling a broader strategy of fiscal punishment for ideological nonalignment. Agencies, universities, and contractors are increasingly subject to funding restrictions unless they comply with executive compacts or ideological mandates.

This weaponization of budgetary authority bypasses legislative oversight, undermines the separation of powers, and targets vulnerable communities through fiscal exclusion. It constitutes a structural threat to constitutional governance and a live violation of the Guarantee Clause, Equal Protection Clause, and Due Process Clause.

**Footnotes**

1. Vought, R. (2023). *Mandate for Leadership: Budgeting for Renewal*. Heritage Foundation.

2. U.S. Department of Transportation, Infrastructure Investment Reports (2025).

3. Chicago Transit Authority, Red Line Extension Funding Memo (2025).

4. *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200 (1995); *Grutter v. Bollinger*, 539 U.S. 306 (2003).

5. Vought, R. (2024). Public remarks at CPAC, quoted in multiple outlets including Politico and The Hill.

**SECTION IV-B: Undermining Federal Investigative and Intelligence Infrastructure**

Project 2025 proposes a radical restructuring of federal law enforcement and intelligence operations, including the weakening of the FBI's independence, the politicization of investigative authority, and the rollback of post-9/11 counterterrorism frameworks. These changes are not administrative—they are existential. They compromise national security, erode constitutional remedy, and subordinate investigative integrity to executive ideology.

**I. Subordination of the FBI to Executive Ideology**

The Federal Bureau of Investigation (FBI) serves as the nation's lead investigative agency, tasked with enforcing federal law, protecting civil rights, and coordinating domestic intelligence. Project 2025 seeks to dismantle this independence by:

- Reclassifying senior FBI officials under **Schedule F**, allowing mass dismissal of career personnel involved in policy, enforcement, or oversight.
- Installing ideologically vetted leadership aligned with executive priorities, particularly in politically sensitive investigations.
- Restricting the FBI's ability to pursue cases involving domestic extremism, election interference, and executive misconduct.

These proposals would transform the FBI from a neutral investigative body into a politically filtered enforcement arm—violating constitutional protections of due process, equal protection, and judicial remedy.

**II. Weakening of Counterterrorism Infrastructure**

Following the September 11 attacks, Congress established a robust counterterrorism framework involving the FBI, DHS, TSA, and the National Counterterrorism Center (NCTC). Project 2025 threatens this infrastructure by:

- Proposing the **elimination or consolidation of DHS and TSA**, which were created to coordinate national security and intelligence-sharing.
- Shifting terrorism-related responsibilities to smaller agencies or state-level entities, fragmenting the federal response.
- Deprioritizing international terrorism in favor of a narrow focus on border enforcement and domestic surveillance.

This rollback risks returning the United States to a **pre-9/11 posture**, where jurisdictional gaps and intelligence silos left the nation vulnerable to coordinated attacks.

**III. Politicization of National Intelligence Operations**

Project 2025 envisions restructuring intelligence agencies to align more closely with executive ideology. This includes:

8

- Streamlining intelligence reporting to prioritize loyalty and alignment over objectivity.
- Replacing career analysts and operatives with politically vetted personnel.
- Expanding surveillance capabilities with reduced oversight, raising concerns about civil liberties and Fourth Amendment violations.

Such politicization undermines the credibility and efficacy of national intelligence, jeopardizing both domestic security and international partnerships. It also risks the erosion of bipartisan trust in intelligence findings, which are essential for congressional oversight and public accountability.

### IV. Erosion of Investigative Remedy and Public Safety

The restructuring of investigative and intelligence agencies under Project 2025 would:

- Eliminate neutral enforcement of federal law
- Undermine civil rights protections and prosecutorial independence
- Weaken the nation's ability to respond to terrorism, cyber threats, and foreign interference
- Create a loyalty-based enforcement regime incompatible with constitutional governance

These changes constitute a live violation of the **Guarantee Clause**, the **Due Process Clause**, and the **Equal Protection Clause**. They compromise the architecture of remedy and endanger the structural integrity of democratic oversight.

### IV-C. Executive Overreach and the October 2, 2025 Compact

The October 2, 2025 Compact for Academic Excellence, issued by the Trump administration, imposes sweeping ideological conditions on nine major universities in exchange for preferential access to federal funding. These conditions include mandatory standardized testing, bans on race- and gender-conscious programming, tuition freezes, and international enrollment caps. The Compact demands structural compliance without offering any empirical evidence that the targeted institutions have violated the Supreme Court's 2023 ruling in *Students for Fair Admissions v. Harvard.*

Defendants cite no investigative report, audit, or statistical analysis demonstrating that minority students were admitted on the basis of race in violation of constitutional standards. Nor do Defendants offer any evidence—historical, economic, or civic—that students admitted under prior frameworks have failed to contribute meaningfully to the nation's academic, scientific, or democratic success. The Compact's punitive framework rests on ideological suspicion—not constitutional fact.

Moreover, the administration's authority to enforce judicial interpretations remains unresolved. The president's immunity status has not been fully defined by the courts. Absent a definitive ruling, the executive branch lacks constitutional authority to unilaterally interpret and enforce judicial decisions against academic institutions. The Compact's enforcement mechanism is not judicial—it is executive filtration masquerading as constitutional compliance.

The administration also fails to acknowledge the structural adaptations made by universities during the COVID-19 pandemic, including hybrid and remote learning models that preserved educational continuity under national emergency. Rather than expanding access through technological infrastructure now widely available, the Compact narrows opportunity—replacing innovation with ideological conditioning. This omission reflects not a commitment to excellence, but a refusal to engage with the realities of modern education.

Local governments and courts have long recognized that the education of our youth is among the most important functions of government. The Compact undermines that function by subordinating educational autonomy to executive ideology, chilling dissent, and filtering access to remedy. This structural overreach violates the First and Fourteenth Amendments and undermines the separation of powers. It transforms academic institutions into ideological instruments, eroding their autonomy and constitutional purpose.

.

## SECTION V: CLAIMS FOR RELIEF

### Count I – Violation of Separation of Powers (U.S. Const. arts. I, II, III)

Defendants have designed and begun implementing a federal initiative that consolidates executive power in violation of the Constitution's separation of powers. Project 2025 proposes the elimination of agency independence, the subordination of the judiciary, and the politicization of civil service appointments. These actions undermine the structural integrity of the Republic and violate the Constitution's allocation of legislative, executive, and judicial authority.

This consolidation departs from the constitutional framework established by the Founders, who intentionally separated powers to prevent tyranny and ensure institutional restraint. By subordinating independent agencies and politicizing civil service appointments, Defendants have created a loyalty-based governance structure that erodes impartial enforcement, judicial review, and legislative oversight. Project 2025's Mandate for Leadership outlines mechanisms such as Schedule F reclassification, agency defunding, and judicial bypass strategies that operationalize this consolidation. These mechanisms are not merely theoretical—they are being actively prepared for implementation.

**Count II – Violation of Equal Protection (U.S. Const. amend. XIV)**

Project 2025 disproportionately harms historically marginalized communities, including Black Americans and naturalized Hispanic citizens, by dismantling DEI frameworks, civil rights enforcement mechanisms, and institutional protections. The plan's emphasis on ideological loyalty and its rollback of equity initiatives constitutes intentional discrimination and violate the Equal Protection Clause.

In particular, Project 2025's immigration and enforcement proposals—including mass deportation operations and the use of ICE agents for domestic sweeps—risk unlawfully targeting naturalized Hispanic Americans. These actions blur the constitutional distinction between citizens and non-citizens, subjecting lawful residents to racial profiling, detention, and denial of due process.

Plaintiff asserts that these provisions reflect a pattern of discriminatory intent and structural bias, and that their implementation violate the Fourteenth Amendment's guarantee of equal protection under the law.

**Footnote 1:**
Project 2025's immigration enforcement proposals, including mass deportation operations and expanded ICE authority, risk unlawfully targeting naturalized Hispanic citizens. These provisions blur the constitutional distinction between citizens and non-citizens, subjecting lawful residents to racial profiling, detention, and denial of due process. See *Project 2025: Mandate for Leadership*, Homeland Security and Immigration chapters.

Project 2025's Homeland Security chapter, authored by Ken Cuccinelli and supported by Tom Homan, outlines mass deportation strategies including worksite sweeps, expanded ICE detention, and military-assisted arrest operations. These provisions risk unlawfully targeting naturalized Hispanic citizens and blur the constitutional distinction between citizens and non-citizens.

Ken Cuccinelli stated that ICE should be allowed to operate "soft-sided facilities (tents or camps) wherever it chose," and that states should be barred from setting higher detention standards.

Tom Homan declared:
"Trump comes back in January, I'll be on his heels coming back, and I will run the biggest deportation force this country has ever seen… They ain't seen shit yet. Wait until 2025."
He also warned: "If you're in this country illegally, you got a problem."

**Judicial Framing: Evidence of Discriminatory Intent**

The quotes cited herein are not rhetorical flourishes—they are operational declarations. The authors of Project 2025, including Ken Cuccinelli and Tom Homan, have articulated

enforcement strategies that disproportionately target Hispanic communities, including naturalized citizens. Their language reflects not only policy ambition but discriminatory intent.

These statements, when paired with Project 2025's structural proposals, demonstrate a coordinated effort to redefine citizenship, collapse due process protections, and normalize racial profiling under the guise of federal enforcement.

The Court is invited to treat these quotes as evidence of unconstitutional motive and structural override—supporting Plaintiff's claim that Project 2025 violates the Equal Protection Clause and functions as a stealth replacement of the constitutional order.

**Replacement Doctrine Index**

*A Mapping of Project 2025 Provisions to Constitutional Violations*

| Quote / Provision | Actor | Operational Intent | Constitutional Violation |
|---|---|---|---|
| "I will run the biggest deportation force this country has ever seen… They ain't seen shit yet." | Tom Homan | Mass deportation targeting Hispanic communities | Equal Protection (Amend. XIV), Due Process (Amend. V) |
| "ICE should be allowed to operate soft-sided facilities wherever it chose." | Ken Cuccinelli | Unregulated detention and racial profiling | Due Process, Equal Protection |
| Schedule F reinstatement | Heritage Foundation | Loyalty-based personnel purge | First Amendment, Equal Protection |
| Dismantling DOJ civil rights enforcement | Multiple contributors | Suppression of civil rights litigation | Equal Protection, Separation of Powers |
| Removal of "diversity" and "gender equity" from federal rules | Regulatory Reform chapter | Ideological rewriting of governance | First Amendment, Equal Protection |

**Selected Entries**

**1. Executive Authority and Unitary Control**

- **Section Cited**: Mandate for Leadership – Chapter on Presidential Power

- **Operational Intent**: Centralize all executive branch authority under direct presidential control, eliminating agency independence.

- **Constitutional Implication**: Violates the separation of powers by collapsing checks and balances; replaces distributed governance with unilateral command.

## 2. Personnel and Loyalty Infrastructure

- **Section Cited**: Mandate for Leadership – Civil Service Reform

- **Operational Intent**: Reinstate Schedule F to purge career civil servants and install ideologically vetted loyalists.

- **Constitutional Implication**: Undermines due process and equal protection; replaces merit-based governance with partisan enforcement.

## 3. Immigration Enforcement and Racial Targeting

- **Section Cited**: Mandate for Leadership – Homeland Security chapter by Ken Cuccinelli and Tom Homan

- **Operational Intent**: Mass deportation operations, expanded ICE authority, and use of active-duty military for domestic arrest sweeps

- **Constitutional Implication**: Violates Equal Protection and Due Process by enabling racial profiling and unlawful detention of naturalized Hispanic citizens

- **Direct Quotes**:

    o Cuccinelli: *"ICE should be allowed to operate soft-sided facilities wherever it chose."*

    o Homan: *"I will run the biggest deportation force this country has ever seen… They ain't seen shit yet."*

    o Homan: *"If you're in this country illegally, you got a problem."*

## 4. Judicial Restructuring and Enforcement Override

**Section Cited**: Mandate for Leadership – Department of Justice and Judicial Oversight

**Operational Intent**: Reassign DOJ priorities to enforce ideological goals, including prosecuting political opponents and limiting civil rights litigation.

**Constitutional Implication**: Undermines judicial independence and due process; replaces neutral enforcement with partisan targeting.

**Count III – Violation of Due Process (U.S. Const. amend. I, V & XIV)**

The restructuring of federal agencies under Project 2025 eliminates procedural safeguards, silences dissent, and impedes access to remedy. The purge of career officials and the installation of ideologically vetted loyalists deprive Americans of fair process in the administration of justice and governance.

Operating in parallel with Project 2025's broader restructuring of federal agencies, the October 2, 2025 Compact for Academic Excellence imposes ideological conditions on federal funding, including mandatory standardized testing, bans on race- and gender-conscious programming, tuition freezes, and international enrollment caps. These conditions restructure academic governance and chill institutional dissent.

**Count IV – Violation of First Amendment Rights (U.S. Const. amend. I)**

Project 2025 threatens freedom of speech, press, and association by targeting dissenting voices, suppressing independent media, and politicizing federal enforcement. The plan's implementation has already resulted in retaliatory actions against journalists, civil servants, and advocates whose views diverge from the administration's agenda.

Federal agents deployed under Project 2025's enforcement framework have used violent and indiscriminate tactics against peaceful demonstrators, religious leaders, and members of the press. These actions include the use of tear gas, rubber bullets, flash grenades, and mass arrests without legal basis. Such conduct violates the First Amendment's guarantee of peaceful expression and constitutes viewpoint discrimination.

Plaintiff asserts that Project 2025's operational blueprint—including its suppression of dissent, its targeting of independent media, and its ideological enforcement of loyalty—reflects a coordinated effort to override constitutional protections and silence opposition. These actions are not incidental—they are structural. They replace the constitutional framework of free expression with a regime of enforced conformity.

**Sources:** Loevy & Loevy Press Release on First Amendment Violations

**Count V – Violation of Judicial Independence (U.S. Const. art. III)**

The plan's intent to subordinate the judiciary to executive will violates Article III of the Constitution. Project 2025 proposes structural changes that would erode judicial review, politicize appointments, and undermine the courts' role as a co-equal branch of government.

**Count VI – Violation of the Non-Delegation Doctrine and Constitutional Remedy**
Project 2025 functions as a shadow governance framework that preempts Congressional authority and judicial oversight. Its implementation constitutes an unconstitutional delegation of power to private actors and ideological networks, violating the Constitution's guarantee of remedy and lawful process.

**Count VII – Violation of Investigative Integrity and National Security Frameworks (U.S. Const. amend. V, art. IV § 4)**

Project 2025 proposes the subordination of federal investigative agencies, including the FBI, to direct executive control. It seeks to reclassify senior personnel under Schedule F, replace career officials with ideologically vetted loyalists, and restrict investigations into domestic extremism, election interference, and executive misconduct. These changes violate the Due Process Clause by eliminating neutral enforcement and judicial remedy.

Additionally, Project 2025 threatens the post-9/11 counterterrorism infrastructure by proposing the elimination or consolidation of DHS and TSA, deprioritizing international terrorism, and fragmenting federal intelligence coordination. These actions undermine the republican form of government guaranteed under Article IV, Section 4, and compromise the structural integrity of national security operations.

Among the agencies targeted for structural dismantling is the Transportation Security Administration (TSA), which Project 2025 proposes to privatize. This shift would remove federal oversight from a core national security function, replacing public constitutional accountability with private control. The proposal reflects a broader pattern of executive inversion—where public remedy is subordinated to ideological or profit-based control. Such restructuring violates the constitutional architecture of federal governance and undermines the procedural safeguards guaranteed under Amendments I, V, and XIV.

The politicization of investigative and intelligence functions constitutes a live constitutional violation. It endangers public safety, erodes civil liberties, and transforms federal law enforcement into a loyalty-based enforcement regime incompatible with democratic governance.

See Section IV-B.

**Count VIII – Violation of Separation of Powers and Judicial Independence**

*(U.S. Const. arts. I, II, III; amend. V)*

Project 2025 proposes a governance model that consolidates executive power, bypasses legislative oversight, and subordinates' judicial independence to ideological loyalty. Through personnel purges, executive compacts, and advisory board vetting, the initiative seeks to restructure the federal government into a vertically integrated enforcement regime controlled by the executive branch.

The plan includes:

- Reclassification of tens of thousands of federal employees under **Schedule F**, enabling mass dismissal of career civil servants across all branches.

- Replacement of neutral agency heads, inspectors general, and enforcement officers with ideologically vetted loyalists.

- Coordination of judicial appointments through affiliated entities such as the Judicial Crisis Network and First Legal, with the intent to reshape constitutional interpretation and limit judicial review.

These actions violate the **separation of powers** by collapsing the distinction between executive, legislative, and judicial functions. They undermine **judicial independence** by transforming the courts into instruments of executive ideology, rather than neutral arbiters of law.

The use of executive compacts to impose ideological mandates on universities, agencies, and contractors further bypasses congressional debate and public referendum. It replaces democratic consent with executive fiat, violating the **Due Process Clause** and the structural safeguards of Article I and Article III.

Project 2025 does not merely propose policy—it proposes a constitutional inversion. Remedy must be judicial, structural, and immediate.

See **Section IV: Nature of the Threat**, including **IV-A** (Budgetary Weaponization), **IV-B** (Investigative Capture), and **Exhibits F and J**.

**Count IX – Violation of Constitutional Remedy and Access to Redress**

*(U.S. Const. amend. I, V, XIV; art. III)*

Project 2025 proposes a governance framework that systematically dismantles the institutional pathways through which individuals and communities seek redress for constitutional violations. By restructuring federal agencies, subordinating investigative bodies, and politicizing judicial appointments, the initiative eliminates neutral enforcement and forecloses access to remedy.

The plan includes:

- The defunding of civil rights enforcement mechanisms, including DOJ divisions tasked with investigating discrimination, voting rights violations, and police misconduct.

- The reclassification and removal of career personnel responsible for processing complaints, conducting investigations, and issuing enforcement actions.

- The installation of loyalty-based filters across agencies, universities, and contractors— where access to funding and remedy is conditioned on ideological alignment.

- The politicization of judicial appointments and the narrowing of standing doctrine, limiting who may bring constitutional claims and under what conditions.

These actions violate the **Due Process Clause** and the **Equal Protection Clause** by denying individuals a fair and impartial process for asserting their rights. They also violate the **First Amendment** by chilling dissent and conditioning remedy on ideological conformity.

By dismantling the architecture of remedy, Project 2025 undermines the core function of Article III courts and the constitutional promise of redress. It transforms the federal government from a guarantor of rights into a gatekeeper of ideology.

See **Section IV**, especially **IV-A** (Budgetary Weaponization), **IV-B** (Investigative Capture), and **Exhibits F and J**.

**Count X – Violation of Democratic Participation and Civic Remedy**

*(U.S. Const. amend. I, XIV; art. I, § 2; art. IV, § 4)*

Project 2025 proposes a governance framework that undermines democratic participation by restructuring federal institutions to suppress dissent, condition access to remedy on ideological conformity, and eliminate neutral pathways for civic engagement. It transforms the federal government from a representative system of checks and balances into a vertically integrated enforcement regime controlled by executive ideology.

The plan includes:

- The use of executive compacts to impose ideological mandates on universities, agencies, and contractors—bypassing legislative debate and public referendum.

- The defunding of programs and institutions that support civic education, voting access, and community-based remedy.

- The installation of loyalty-based filters across federal employment, grant eligibility, and institutional partnerships—excluding dissenting voices from participation.

- The restructuring of investigative and intelligence agencies to deprioritize election integrity, civil rights enforcement, and public accountability.

These actions violate the **First Amendment** by chilling speech, suppressing dissent, and conditioning civic participation on ideological alignment. They violate the **Fourteenth Amendment** by denying equal access to remedy and representation. They violate **Article I, Section 2** by undermining the representative function of federal institutions, and **Article IV, Section 4** by dismantling the republican form of government.

Project 2025 does not merely propose policy—it proposes a civic inversion. It replaces democratic participation with ideological filtration, and constitutional remedy with executive discretion.

See **Section IV**, especially **IV-A** (Budgetary Weaponization), **IV-B** (Investigative Capture), and **Exhibits F and J**.

**Count XI – Violation of Legislative Oversight and Constitutional Accountability**

*(U.S. Const. arts. I, II; amend. I; art. IV, § 4)*

Project 2025 proposes a governance model that deliberately obstructs congressional oversight, consolidates executive control over enforcement infrastructure, and eliminates transparency mechanisms essential to constitutional accountability. These actions violate **Article I** by undermining the legislative branch's investigative and appropriations powers, and violate the **First Amendment** by suppressing public access to information and civic remedy.

The plan includes:

- The use of executive compacts and agency restructuring to bypass congressional debate and impose unilateral mandates

- The reclassification of federal personnel to prevent whistleblower protections and shield executive actions from legislative inquiry

- The politicization of enforcement agencies, including ICE and DHS, to operate under executive ideology with minimal external review

A particularly egregious example is the **blockage of congressional oversight visits to ICE detention facilities**, where members of Congress—especially those from the **minority political party**—have been repeatedly denied access to inspect conditions, interview detainees, or assess compliance with federal law. In 2025, Democratic members were turned away from ICE facilities in **Broadview, Illinois** and **Adelanto, California**, despite federal statutes guaranteeing their right to conduct oversight. Meanwhile, Republican members were granted access under a **seven-day advance scheduling policy** that was **not codified in law** and **selectively enforced**.

This disparity is not procedural—it is structural. The Executive, under the framework of Project 2025, no longer recognizes the legitimacy of oversight from the minority party in Congress. It does not heed their inquiries, respect their constitutional role, or acknowledge the constituencies they represent. This is not a policy dispute—it is a rupture in co-equal governance. By denying access, withholding information, and subordinating enforcement infrastructure to ideological control, the Executive has severed its constitutional tether to representative democracy. It has replaced accountability with insulation, and co-equality with unilateralism.

These actions violate the **Guarantee Clause** by dismantling the republican form of government, and they obstruct the constitutional architecture of checks and balances. The legislative branch cannot fulfill its constitutional role if it is denied access, silenced in oversight, and excluded from enforcement review.

See **Section IV**, especially IV-A (Budgetary Weaponization), **IV-B** (Investigative Capture), and **Exhibits F and J**.

**SECTION XII – Summary of Constitutional Violations**

This section consolidates the constitutional injuries detailed in Counts I through XI. Each count identifies a distinct structural violation arising from the implementation of Project 2025 and its affiliated executive initiatives. Together, they form a coordinated pattern of governance inversion—where remedy is suppressed, oversight obstructed, and constitutional architecture dismantled.

The following table summarizes the constitutional provisions violated, the nature of each injury, and the supporting sections and exhibits. It is designed to assist the Court, coalition partners, and public reviewers in understanding the scope, severity, and systemic character of the violations alleged.

The violations outlined in the following table are not merely procedural—they are structural. Each count reflects a deliberate attempt to suppress remedy, obstruct oversight, and invert constitutional governance. Together, they form a coordinated architecture of exclusion, filtration, and executive insulation. This table distills the legal framework of the complaint, mapping each constitutional injury to its operative mechanism and evidentiary support.

**Table of Constitutional Violations**

| Count | Constitutional Provision Violated | Structural Injury | Supporting Sections & Exhibits |
|---|---|---|---|
| I | *U.S. CONST. AMEND. XIV –* Equal Protection | Selective enforcement and exclusion of dissenting institutions through defunding and ideological filtration | IV-A; Exhibits F, J |
| II | *U.S. CONST. AMEND. V –* Due Process | Elimination of neutral enforcement and suppression of remedy via loyalty-based purges and personnel restructuring | IV-A, IV-B; Exhibits F, J |
| III | *U.S. CONST. AMENDS. I & XIV –* Academic Freedom & Institutional Autonomy | Imposition of executive ideology on universities through funding compacts and conditional mandates | IV-A; Exhibit F |
| IV | *U.S. CONST. ART. IV, § 4 –* Guarantee Clause | Replacement of republican governance with executive filtration and bypassing of legislative and judicial checks | IV, IV-A, IV-B; Exhibits F, J |

| Count | Constitutional Provision Violated | Structural Injury | Supporting Sections & Exhibits |
|---|---|---|---|
| V | *U.S. CONST. AMEND. I* – Free Speech & Civic Participation | Chilling of dissent and ideological conditioning of civic participation through enforcement and access control | IV-A, IV-B; Exhibits F, J |
| VI | *U.S. CONST. ARTS. I, II, III* – Separation of Powers | Consolidation of executive control and erosion of co-equal governance through structural bypass of Congress and courts | IV-A, IV-B; Exhibits F, J |
| VII | *U.S. CONST. AMEND. V; ART. IV, § 4* – Due Process & Guarantee Clause | Subordination of investigative infrastructure and politicization of national security frameworks | IV-B; Exhibits F, J |
| VIII | *U.S. CONST. ARTS. I, II, III; AMEND. V* – Judicial Independence & Structural Remedy | Reclassification of personnel and loyalty-based appointments undermining judicial review and remedy | IV-A, IV-B; Exhibits F, J |
| IX | *U.S. CONST. AMENDS. I, V, XIV; ART. III* – Access to Constitutional Remedy | Defunding and narrowing of enforcement pathways, excluding affected communities from redress | IV-A, IV-B; Exhibits F, J |
| X | *U.S. CONST. AMENDS. I, XIV; ARTS. I, IV* – Democratic Participation & Civic Remedy | Filtration of civic access and suppression of dissent through ideological gatekeeping | IV-A, IV-B; Exhibits F, J |
| XI | *U.S. CONST. ARTS. I, II; AMEND. I; ART. IV, § 4* – Legislative Oversight & Accountability | Blockage of minority party oversight and severing of co-equal governance through selective access and executive insulation | IV-B; Exhibits F, J |

**SECTION XIII – Prayer for Relief**

Plaintiff respectfully requests that this Court:

1. **Declare** that Project 2025, as structured and implemented, violates the United States Constitution, including but not limited to Articles I, II, III, and IV, and Amendments I, V, and XIV.

2. **Enjoin** the continued implementation of Project 2025's personnel reclassification, agency restructuring, and executive compacts that bypass legislative oversight and suppress constitutional remedy.

3. **Order** the restoration of congressional access to all federal enforcement facilities, including ICE detention centers, without unlawful notice requirements or partisan filtration.

4. **Mandate** the preservation of investigative independence within the FBI, DHS, and related agencies, including the reversal of Schedule F reclassifications and the reinstatement of career personnel protections.

5. **Require** the Executive Branch to comply with statutory oversight obligations, including equal access for minority party members of Congress and full transparency in enforcement operations.

6. **Protect** the constitutional right to remedy by restoring funding, personnel, and institutional pathways for civil rights enforcement, academic autonomy, and judicial review.

7. **Affirm** the constitutional guarantee of a republican form of government by prohibiting ideological filtration in federal employment, grant eligibility, and civic participation.

8. **Award** any further relief the Court deems just and proper to restore constitutional balance, democratic participation, and institutional integrity.